UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | |
|---|---|
| WILLIAM A. JONES, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) Case No. 3:22-cv-00058-GFVT-EBA |
| | ) |
| v. | ) |
| | ) |
| | ) **MEMORANDUM OPINION** |
| GEORGETOWN COLLEGE, *et al.*, | ) **&** |
| | ) **ORDER** |
| Defendants. | ) |
| | ) |
| | ) |

*** 

This matter is before the Court on Defendants' Motion for Judgment on the Pleadings [R. 24.] Plaintiffs seek a judgment against Defendants for defamation, invasion of privacy, intentional infliction of emotional distress, vicarious liability, breach of contract, Title IX violations, and various federal and state constitutional violations. [R. 1-3 at 46-79.] In response, Defendants seek judgment on the pleadings, arguing that the Court should dismiss some of the claims and parties as they do not state a proper claim for relief. [R. 24 at 3.] Having reviewed the pleadings, the Court will **GRANT** Defendants' Motion for Judgment on the Pleadings.

**I**

Mr. William A. Jones was the President of Georgetown College for roughly two years. While President, Mr. Jones was accused of sexual assault by a former colleague in 2021. Mr. Jones was then terminated for cause as President of Georgetown College on November 1, 2021. He now seeks damages for "reputational, mental, emotional, and professional damage caused." [R. 1-3 at 9.]

As the President of Georgetown College, Mr. Jones frequently attended events with colleagues on behalf of the College. On October 18, 2021, Mr. Jones and Hannah Kroskie, a

former employee at Georgetown College, traveled to Indianapolis, Indiana to attend a black-tie fundraiser on behalf of the College.  Following the trip, Ms. Kroskie filed a report of sexual assault against Mr. Jones with the Indianapolis Police Department. Ms. Kroskie's claims were later dismissed, and Mr. Jones was cleared of all charges.  [R. 1-1 at 103.]  In addition, Christy Mai, another former employee at Georgetown College, also accused Mr. Jones of sexual assault. The Complaint contends, however, that Mr. Jones' relationship with Ms. Mai was consensual. [R. 1-1 at 54.]  Nonetheless, the allegations of sexual assault prompted an emergency meeting of the Executive Committee of the Board of Trustees, who voted to terminate Mr. Jones' employment contract with Georgetown College.  This vote was later affirmed by the full Board of Trustees, and Mr. Jones was terminated on November 1, 2021.

As a result of his termination, Mr. Jones was prohibited from contacting any Board member, faculty, student, or staff at the College. Mr. Jones was also prohibited from entering the College's campus and was asked to immediately vacate the President's home.  On November 2, 2021, the College's Acting President, Rosemary Allen, released a statement detailing the events leading to Mr. Jones' termination.  [R. 1-3 at 37.]

In addition to Mr. Jones, Mr. Jones' family is also seeking recovery for the damage inflicted on them as a result of Mr. Jones' termination.  After Mr. Jones' termination, Mrs. Jones was made an outcast in her community.  [R. 1-3 at 9.]  The Complaint alleges that Mrs. Jones cannot attend events or worship without fear of retribution.  *Id.*  Further, Mr. Jones' daughter, Annalise, who currently attends Georgetown College, was allegedly harassed following her father's termination.  Specifically, the Complaint alleges that some members of the Kappa Alpha Order fraternity planned to "gang rape her on the Civil War era cannon located in front of their campus 'house.'"  [R. 1-3 at 9.]  Georgetown College issued No Contact Orders on Annalise

Jones, ordering her to not have any contact with the fraternity members involved. *Id.* at 9-10. The College also suspended the fraternity for four years. *Id*. Mr. Jones' other five children are also included in the complaint, noting that they have all been "scarred and damaged by the physical and emotional trauma inflicted upon their father and by extension their siblings and themselves." [R. 1-3 at 10.]

Thus, Mr. Jones and his family initiated this lawsuit in Franklin Circuit Court on September 30, 2022, seeking compensatory and punitive damages. The Defendants then removed this action on October 19, 2022, to this Court based on federal question jurisdiction. [R. 1 at 8.] The Defendants have filed a Motion for Judgment on the Pleadings, arguing various claims and parties should be dismissed as they do not properly state a claim for relief. [R. 24 at 3.] The matter, having been fully briefed, is now ripe for review.

## II

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "The standard of review for a Rule 12(c) motion is the same as for a motion under Rule 12(b)(6) for failure to state a claim upon which relief can be granted." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Zeigler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511-12 (6th Cir. 2001)). "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *JP Morgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (internal citations omitted). Additionally, courts can examine "public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss, as long as they are referred to in the [c]omplaint and are central to the claims

contained therein" without transforming a motion for judgment on the pleadings into a motion for summary judgment. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

As is the case with a motion to dismiss under Rule 12(b)(6), in a Rule 12(c) motion for judgment on the pleadings, the Court "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] its allegations as true, and draw[s] all inferences in favor of the plaintiff." *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007) (citation omitted). The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000)). The Supreme Court explained that in order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### A

The Court will first address counts with federal claims. Plaintiffs bring Count Eleven under 42 U.S.C. § 1983, which provides a civil action for deprivation of rights. Specifically, the Plaintiffs allege that the Defendants deprived Plaintiff Annalise Jones "of her guaranteed First, Fourth, Fifth and Fourteenth Amendment Rights." [R. 1-3 at 69.] Georgetown College argues, however, that the College is not a state actor, such that the Defendants cannot be sued under the United States Constitution. The Supreme Court noted that determining whether an organization is a state actor is a "necessarily fact-bound inquiry." *Brentwood Academy v. Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 298 (1982).

There are three tests for state action. *Brentwood Academy* held that courts may attribute state action to a nominally private actor's activity that "results from the State's exercise of

4

'coercive power,' when the State provides 'significant encouragement, either overt or covert,' or when a private actor operates as a 'willful participant in joint activity with the State or its agents.'" *Id.* at 296. In *Faparusi v. Case Western Reserve University*, the Sixth Circuit explained that a plaintiff cannot adequately claim that a university is a state actor based solely on the fact that the university investigated the plaintiff pursuant to Title IX. 711 F. App'x 269, 275 (6th Cir. 2017). The risk of losing federal funding is also insufficient to support state action. *Id.* (citing *Doe v. Case W. Rsrv. Univ.*, No. 1:17-cv-414, 2017 WL 3840418, at *9 (N.D. Ohio Sept. 1, 2017)). Without "evidence that 'the federal government participated in the proceedings against the plaintiff, or dictated the specific finding of responsibility in th[e] case,'" then a private university's conduct is not state action. *Id.* (quoting *Case W. Rsrv. Univ.*, 2017 WL 3840418, at *9). The case law, both within and outside the Sixth Circuit, highlights that private colleges are not transformed into state actors while conducting Title IX investigations. *See, e.g., Heineke v. Santa Clara Univ.*, 965 F.3d 1009, 1014 (9th Cir. 2020); *Doe v. Univ. of Denver*, 952 F.3d 1182, 1188 (10th Cir. 2020).

Plaintiff Annalise Jones' allegation neither satisfies any of the state-actor tests nor overcomes the persuasive case law of our sister circuits. The Plaintiffs assert that a "private college is acting as a state actor when it is performing Title IX review" because "federal funds are specifically tied to the proper execution of Title IX." [R. 25 at 4.] However, as noted above, federal funding is not enough to make a private action subject to the state action doctrine. The Plaintiffs further contend that the "42 U.S.C. § 1983 claim rests squarely on the failure of Georgetown College to adhere to Title IX and their disparaging treatment" of Annalise Jones as a result. *Id.* at 5. Again, as discussed above, the College is not considered a state actor solely because of a Title IX investigation. As such, there is not enough evidence alleged in Count

5

Eleven to make out a plausible Title IX claim against the Defendants. Count Eleven must be dismissed against the Defendants because they are not considered state actors.

### B

Further, in Count Fourteen of the Complaint, Plaintiff William Jones alleges that Georgetown College, the Board of Trustees, and the Georgetown Administrative Defendants violated 20 U.S.C. § 1681, commonly referred to as Title IX, by "[failing] to provide administrative, substantive, and procedural due process in accordance with . . . Title IX of the Education Amendments of 1972." [R. 1-1 at 97.] Georgetown College contends that Count Fourteen must be dismissed against individual defendants because Title IX claims cannot be asserted against individual defendants. [R. 24-1 at 11.] In response, the Plaintiffs contend that the individual defendants were "acting outside of the purview of their role and therefore should be held accountable for their violations under Title IX." [R. 25 at 5.]

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). The Plaintiffs argue that the individual Defendants should remain as parties because the individual defendants were acting outside the purview of their role, citing *Doe v. Baum*, 903 F.3d 575 (6th Cir. 2018). However, the Plaintiffs' reliance of *Doe v. Baum* is misplaced, as it does not address the issue of whether individual defendants can be sued under Title IX. The Plaintiffs argue that the Sixth Circuit in *Baum* held that "the university deprived a male student of his right to due process by failing to provide an opportunity for cross-examination." [R. 25 at 5.] While this is in fact the holding, the Sixth Circuit in *Baum* does not elucidate whether individual defendants can be sued under Title IX. To the contrary, both the United States Supreme Court

6

and the Sixth Circuit have held that Title IX does not impose personal liability on individuals unless they are recipients of federal funds. *See Fitzgerald v. Barnstable School Committee*, 555 U.S. 246, 257 (2009); *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999); *Stiles v. Grainger Cty.*, 819 F.3d 834 (6th Cir. 2016). The Plaintiffs have provided no evidence that the individual defendants have received federal funds under Title IX. As such, Count 14 is dismissed as to the individual defendants.

## C

In addition to Title IX violations, Count Fourteen alleges that the Defendants violated the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution and Section Two of the Kentucky Constitution. With respect to the federal Constitution claims, because Georgetown College is not a state actor, there cannot be a constitutional violation against a private actor. The Sixth Circuit has held that constitutional protections "are triggered only in the presence of state action and that a private entity acting on its own cannot deprive a citizen of First Amendment rights." *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). As such, Count Fourteen must be dismissed to the extent that it alleges Fourth, Fifth, and Fourteenth Amendment violations under the United States Constitution.

In Count Fourteen, the Plaintiffs also claim a violation of Section Two of the Kentucky Constitution. Section Two of the Kentucky Constitution provides that "[a]bsolute and arbitrary power over the lives, liberty and property of freeman exists nowhere in a republic, not even in the largest majority." Ky. Const. § 2. The Defendants argue "there is no private right of action for a violation of the Kentucky Constitution § 2." [R. 24-1 at 14.] The Court agrees with the Defendants. The Supreme Court of Kentucky has recognized that no private cause of action exists under Section Two. *St. Luke Hospital, Inc. v. Straub*, 354 S.W.3d 529, 536-37 (Ky. 2011)

7

(noting that Kentucky's General Assembly has not authorized a statutory private right of action for state constitutional violations). Despite the Kentucky Supreme Court's ruling in *St. Luke*, the Plaintiffs attempt to analogize Kentucky Statutes that seemingly allow for a private right of action to Section Two of the Kentucky Constitution. [R. 25 at 6 ("Kentucky Law allows a suit against individuals who serve on non-profit boards for their individual acts and therefore are state actors under the Kentucky Constitution.").] However, just because a statute provides a private right of action does not mean that the Kentucky Constitution provides a private right of action. *See St. Luke Hosp., Inc.*, 354 S.W.3d at 536 (noting that violations of a state statute "does not create a private right of action for the state constitution because our constitution is not a statute"). As such, Count Fourteen must be dismissed to the extent it alleges a violation of the Kentucky Constitution Section Two.

**D**

Georgetown College next argues that Count Ten, the intentional infliction of emotional distress claim, must be dismissed as to all Defendants except Defendant Blevins because Blevins is the only Defendant to which an allegation has been alleged. The Plaintiffs argue "Mr. Jones knows that at least five members of the Board were in communication with Granetta Blevins on how to stop the permanent removal of the KA fraternity from Georgetown's campus." [R. 25 at 2.] As such, the Plaintiff argues that through discovery, the parties will "know who exactly those individuals were." *Id.* at 3. To prove intentional emotional distress, the Plaintiff must show: (1) the wrongdoer's conduct was intentional or reckless, (2) the conduct was outrageous and intolerable in that it offends generally accepted standards of decency and morality, (3) a causal connection between the wrongdoer's conduct and emotional distress, and (4) the emotional distress was severe. *Brewer v. Hillard*, 15 S.W.3d 1, 6 (Ky. Ct. App. 1999).

8

The Complaint alleges that after becoming aware of messages between members of the Kappa Alpha Order, "Defendant Blevins and at least five (5) additional members of the Board of Trustees . . . disagreed with and fought against any punishment at all being delivered upon the social fraternity." [R. 1-1 at 88.] Plaintiffs' obligation to provide grounds for their relief requires more than conclusions and recitation of the elements. The Plaintiffs' offer, in support of their Complaint, that "each named Defendant . . . had actual knowledge of the multiple text messages" by and between the Kappa Alpha Order Fraternity. [R. 1-1 at 87.] However, the Complaint does not allege the emotional distress caused to the Plaintiffs by the Defendants' mere knowledge of the text messages. Thus, the Court finds that Plaintiffs have failed to state a claim for intentional infliction of emotional distress against the Defendants, except for Defendant Blevins, that is plausible on its face. As such, the Defendants, apart from Defendant Blevins, are dismissed from Count Ten.

Likewise, the Defendants argue that all Plaintiffs, except Mr. Jones, must be dismissed from Count Ten because they were not emotionally distressed, nor were the actions of the Board directed toward them. [R. 24-1 at 8.] The Plaintiffs argue that the Defendants knew that Mr. Jones and his family endured racial harassment in the past, so the Board should have known that "a racial incident involving any member of the Jones family . . . would have a direct impact on the whole family." [R. 25 at 3.] Plaintiffs' argument is noticeably devoid of any case law supporting their theory that Defendants are liable to all the Plaintiffs in Count Ten. *Id.* at 3-7.

The Defendants provide two cases the Court finds instructive on the issue of the Defendants' liability to all the Plaintiffs: *Allen v. Clemons*, 920 S.W.2d 884 (Ky. App. 1996) and *Fryman v. Masters*, 2004-CA-000932-MR, 2005 WL 1993464 (Ky. App. Aug. 19, 2005). In

9

both *Allen* and *Fryman*, the court declined to allow third-party emotional distress claims. *Allen*, 920 S.W.2d at 885; *Fryman*, 2005 WL 1993464, at *1.

In *Allen*, a sign was placed in the yard of the Plaintiff, which stated "Danger-Child Molester in the Community." *Allen*, 920 S.W.2d at 885. The Plaintiff and the Plaintiff's family sued the Defendant for outrageous conduct.[1] *Id.* The Court of Appeals of Kentucky found that the Plaintiff's wife did not have a claim because the sign was not directed at her, but rather was directed at her husband. *Id.* at 886. Similarly, in *Fryman*, the decedent's family filed an intentional infliction of emotional distress claim against one of the decedent's teachers who spoke ill of decedent. *Fryman*, 2005 WL 1993464, at *1. However, the Supreme Court of Kentucky found that liability for IIED does not extend to third parties. *Id.* at 2. The Kentucky Supreme Court concluded that the decedent's family was not present when the offensive comments were made, and none of the statements referred to the decedent's family. *Id.*

As the above cases illustrate, Kentucky does not allow for recovery of a third-party IIED claim. *Arnold v. Wilder*, 657 F.3d 353, 368 (6th Cir. 2011) ("Kentucky has not yet adopted § 46(2), which subjects an actor to liability where the conduct is directed at a third person . . . ."). Here, with the exception of Mr. Jones, the statements in question were neither made in the presence of any of the Plaintiffs, nor is there evidence the statements were directed at any of the Plaintiffs. [R. 25 at 2-3.] Thus, the remaining Plaintiffs are considered third-party Plaintiffs with respect to the IIED claim. As such, all the Plaintiffs, except Mr. Jones, are dismissed from Count Ten.

---

[1] Under Kentucky law, outrage and intentional infliction of emotional distress are interchangeably used to describe the same tort. *Burgess v. Taylor*, 44 S.W.3d 806, 811 (Ky. App. 2001).

10

**E**

In Count Twelve, Annalise Jones alleges intentional infliction of emotional distress against the Defendants as a result of the Kappa Alpha Order text messages. [R. 1-1 at 91.] The Plaintiffs argue that "discovery will show that there was an active attempt by some members of the administration and the Board of Trustees to discredit Annalise Jones and to protect the Kappa Alpha Order," necessitating all the Defendants to be held liable. [R. 25 at 4.] Georgetown College argues, however, that Kentucky abolished joint and several liability, such that Count 12 should be dismissed to all defendants except Kappa Alpha Order. [R. 25 at 4.]

The Plaintiffs provide no case law supporting their position that the Defendants should be held jointly and severally liable for the Kappa Alpha Order text messages. Perplexingly, in their Response, Plaintiffs state that that "Georgetown College, the Board of Trustees, the Individual Members of the Board of Trustees, and the Georgetown Administrative Defendants are *severally* liable for Count 12." [R. 25 at 7 (emphasis added).] It appears the Plaintiffs have either conflated or confused joint and several with several liability.

First, it is clear that Kentucky has abolished joint and several liability. Under joint and several liability, each defendant will be held entirely responsible for a single indivisible injury. The result being that a plaintiff who was minimally at fault would bear the burden of the entire injury amount. In *Dix & Associates Pipeline Contractors, Inc. v. Key*, the Supreme Court of Kentucky found this result profoundly unfair, and subsequently did away with joint and several liability. 799 S.W.2d 24, 27 (Ky. 1990) (noting it is "fundamentally unfair to require one joint tort-feasor who is only 5 percent at fault to bear the entire loss when another tort-feasor has caused 95 percent of the loss"). The holding in *Dix & Associates* was later codified in KRS §

11

411.182. To the extent the Plaintiffs seek to hold the Defendants jointly and severally liable, they cannot do so under Kentucky law.

Several liability, however, is allowed under Kentucky law. *See Dix & Associates*, 799 S.W.2d at 27. In their Complaint, the Plaintiffs do not allege several liability, they allege joint and several liability. The discrepancy between the Plaintiffs' Complaint and Response with respect to Count Twelve will be construed based on the language of the Complaint. As such, all Defendants, except the Kappa Alpha Order, should be dismissed from Count Twelve because Kentucky does not allow for joint and several liability.

### F

Lastly, Georgetown College also argues that the defamation, false light claims, and intentional infliction of emotional distress claims made by Plaintiffs, other than Mr. Jones, must be dismissed because the alleged statements have to be directed at the person seeking relief. To prove a claim of defamation, the movant must show "(1) defamatory language, (2) about the plaintiff, (3) which is prohibited, and (4) which causes injury to reputation." *Williams v. Blackwell*, 487 S.W.3d 451, 454 (Ky. App. 2016). The Defendants take issue with the second requirement because the Plaintiffs "do not allege that the statement in question are about anyone other than Plaintiff William A. Jones." [R. 24-1 at 5.] The Court finds this argument compelling, and the Plaintiffs do not dispute this argument in their Response. [R. 25.] In the Complaint, Counts Two and Three allege that as a "direct and proximate result of the aforementioned conduct . . . Mr. Jones, his wife, Amy R. Jones, and their children" have suffered damages as a result of the Defendants' statements. [R. 1-3 at 48-55.] However, the statements in question were made about Mr. Jones, not his wife nor his family. As such, the claims of all Plaintiffs, except Mr. Jones, should be dismissed in relation to Counts Two and Three. The

Defendants also ask Count One to be dismissed as to Mr. Jones' wife and family. However, Count One only refers to Mr. Jones. Thus, Count One remains wholly intact.

Similarly, with respect to Counts Four, Five, and Six, which are the false light claims, the Defendants seek to have Mr. Jones' wife and family dismissed as Plaintiffs because the statements in question were not addressed to them. To prove a false light claim, the movant must show (1) the false light in which the other was placed would be highly offensive to a reasonable person, and (2) the publisher had knowledge of, or acted in reckless disregard, as to the falsity of the publicized matter. *McCall v. Courier-Journal and Louisville Time Co.*, 623 S.W.2d 882, 888 (Ky. 1981). Again, the Court agrees with, and the Plaintiffs do not dispute, the Defendants' argument. The requirement that the plaintiff be placed in false light necessarily requires the alleged statements to concern the plaintiff. For the same reasons as stated in defamation discussion, this claim likewise fails. As such, all the Plaintiffs, except Mr. Jones, should be dismissed as to Counts Four, Five, and Six.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant's Motion for Judgment on the Pleadings [**R. 24**] is **GRANTED;**
2. Plaintiffs Amy R. Jones, Annalise Jones, Thomas Jones, Jr., Grace Jones, W.J., II, H.J., and A.J. are **DISMISSED** as parties from Counts 2-6 of the Complaint;
3. All Defendants, except for Defendant Granetta Blevins, are **DISMISSED** as parties from Count 10 of the Plaintiffs' Complaint;

4. Amy R. Jones, Annalise Jones, Thomas Jones, Jr., Grace Jones, W.J., II, H.J., and A.J. are **DISMISSED** as parties from Count 10 of the Plaintiffs' Complaint;

5. Count 11 of the Plaintiffs' Complaint is **DISMISSED**;

6. Georgetown College, the Board of Trustees, the Individual Members of the Board of Trustees, the Georgetown Administrative Defendants are **DISMISSED** from Count 12 of the Plaintiffs' Complaint;

7. The Individual Members of the Board of Trustees and the Georgetown Administrative Defendants are **DISMISSED** from Count 14 of the Plaintiffs' Complaint; and

8. Count 14 of the Plaintiffs' Complaint is **DISMISSED**.

This the 28th day of March, 2024.

Gregory F. Van Tatenhove
United States District Judge